<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNELL WOLFE, | : |
| | : |
| Plaintiff, | :   Civil Action No.: 10-2083 (ES) |
| | : |
| v. | :   <u>OPINION</u> |
| | : |
| CHRIS CHRISTIE, et al., | : |
| | : |
| Defendants. | : |
| | : |

**APPEARANCES:**

> **DONNELL WOLFE, Plaintiff pro se**
> #000064
> East Jersey State Prison – Special Treatment Unit
> 8 Production Way, CN-905
> Avenel, New Jersey 07001
>
> **DANIEL MICHAEL VANNELLA, ESQ.**
> OFFICE OF THE N.J. ATTORNEY GENERAL
> R.J. Hughes Justice Complex
> 25 market Street, P.O. Box 112
> Trenton, New Jersey 08625
> Counsel for Defendants Johnson and Hastings

**SALAS, District Judge**

This matter is before the Court pursuant to a motion for summary judgment (D.E. No. 48) filed on behalf of Defendants, Steven Johnson and Beverly Hastings. Plaintiff has not filed any opposition to Defendants' motion at this time. This motion will be decided on the papers, without oral argument, pursuant to Fed. R. Civ. P. 78. For

the reasons set forth below, the Court will grant Defendants' motion for summary judgment, and dismiss the Complaint as against these Defendants accordingly.

## I.  BACKGROUND

On or about April 23, 2010, Plaintiff, Donnell Wolfe, filed this civil rights Complaint, pursuant to 42 U.S.C. § 1983, against the following defendants: Chris Christie, the Governor of New Jersey; Paula Dow, Attorney General for the State of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Steven Johnson, NJDOC Administrator; and Merril Main, NJDHS Administrator.  (Complaint, Caption and ¶¶ 4b-4g).  In an Opinion and Order, entered respectively on July 19, 2010 and August 25, 2010 (D.E. Nos. 2, 3), the Honorable Peter G. Sheridan, U.S.D.J., dismissed the Complaint without prejudice, in its entirety as against all named defendants, for failure to state a claim,  pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff was permitted to seek leave to re-open his case and file an amended pleading that would cure the deficiencies noted in the Court's July 19, 2010 Opinion.

On or about August 24, 2010, Plaintiff filed an Amended Complaint (D.E. No. 5), pursuant to 42 U.S.C. § 1983, against the following defendants: Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Steve Johnson, Assistant

Superintendent at the East Jersey State Prison, Special Treatment
Unit ("EJSP-STU"); Dr. Merril Main, Clinical Director at EJSP-STU;
Kenneth Sharpe, Assistant Attorney General for the State of New
Jersey; John Main, Chief Director of the NJDHS at the Ann Klein
Forensic Center in Trenton, New Jersey; and Debbie Hasting, New
Jersey Department of Corrections ("NJDOC") Superintendent at the
Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey.
In an Opinion and Order entered on April 4, 2011. Judge Sheridan
dismissed the Amended Complaint for failure to state a claim, except
with respect to Plaintiff's Fourteenth Amendment claim alleging lack
of potable water.   Plaintiff had asserted an unconstitutional
conditions of confinement claim, alleging that he is subjected to
poor living conditions, such as cold showers, poor ventilation,
contaminated water and bug infestation.   In particular, Plaintiff
alleged that the drinking water is bad, and that he was told each
resident would get a case of water each month, but the water goes
to staff instead.   Plaintiff alleged that these conditions are
ongoing and have not been addressed by Defendants.   Judge Sheridan
found that the lack of potable water is a significant hardship and
deprivation that, if true, would rise to the level of a constitutional
violation.   Accordingly, this limited claim was allowed to proceed,
and all other allegations were dismissed.   (D.E. No. 13, April 4,
2011 Opinion at 12-34).   Only Defendants Steve Johnson and Beverly

Hastings[1] have responded to Plaintiff's Complaint, and they now move for summary judgment.

On May 11, 2012, Plaintiff's deposition was taken. (D.E. No. 48-4, May 11, 2012 Transcript). Defendants provide the following Statement of Material Facts, pursuant to L. Civ. R. 56.1, taken from Plaintiff's May 11, 2012 deposition.

In May 2010, Plaintiff and other civilly committed residents of the Special Treatment Unit ("STU") facility in Kearny, New Jersey, were transferred to a newly opened STU facility in East Jersey State Prison's former administrative segregation unit, now the EJSP-STU. (T12:25-14:6). The named Defendant Steve Johnson is an administrator for the New Jersey Department of Corrections ("NJDOC"), who oversaw the EJSP-STU facility. (T26:20-27:1).

Plaintiff was told at some point in time that "water will be supplied to [the residents moving to the new STU facility] .... You can get it on [y]our own or we will give you a case of water each month for yourselves so you can have that." (T36:6-15). Plaintiff testified, however, that he believes that the cases of water meant for him and other STU residents instead were given to officers. (T35:21-22).

---

1 Hastings was mistakenly plead as "Debbie" Hastings. Plaintiff admits that the Defendant is properly named Beverly Hastings. (D.E. No. 48-4, Plaintiff's May 11, 2012 Deposition at 11:5-12).

4

Plaintiff admitted that he has no evidence that Defendant Johnson was made aware of any written complaints regarding his access to potable water. (T41:11-42:1). The EJSP-STU residents were told during community meetings at the EJSP-STU facility that they would be supplied with water. (T37:24-38:4).

Beginning with Plaintiff's arrival at the EJSP-STU facility in May 2010, "big jugs" of water were made available outside in the yard for the residents. (T28:25-29:6, T30:3). The EJSP-STU facility has its own filtering system of the water. (T29:3-4). When the jugs of water are empty, they are refilled and brought back outside. (T33:14-17).

Plaintiff has five yard movements – two in the morning, two in the afternoon, and one in the evening – when he can go outside and access the water jugs. (T33:18-22). This free water supply has always been available to plaintiff, except when it was freezing cold or snowing outside. (T31:10-13).

Cases of bottled water (24-pack) are also available for sale in the canteen. (T32:3-13). STU residents can also order water from an outside "source" or "vendor." (T31:25-32:3).

Plaintiff further testified that he is able to collect enough water from the yard at a time that he does not need to go outside every day. (T32:14-21). Plaintiff collects up to three gallons of water at a time when he goes outside. (T32:21-24). Plaintiff also

admits that he is not raising any claims concerning the lack of drinking water against Defendant Beverly Hastings. (T9:18-20, T10:17-19, T12:2-18, T12:14-15:8).

Plaintiff also stated in his deposition that, as injunctive relief for his claims against Defendants, he seeks to be transferred off of "D wing" and "to have the pipes and stuff, plumbing and everything, fixed." (T43:1-7). However, Plaintiff does not make either of those demands for injunctive relief (¶ 18) in his Amended Complaint.

Plaintiff resides in the "south building" or "south wing" of the STU facility. (T27:14-25). Plaintiff does not assert any physical injury as a result of his claims regarding the drinking water at the EJSP- STU facility. (T19:13-26:19). Plaintiff stated in his deposition that he is not seeking punitive damages in this matter. (T43:20-44:7).

Plaintiff has not responded to Defendants' motion for summary judgment. On or about March 14, 2012, this Court received an "addendum" from Plaintiff in which he complains about water problems at the EJSP-STU facility. (D.E. No. 37). Plaintiff alleges that, on March 2, 2012, the water system was not functioning properly and that the hot water pipe "busted again." (*Id.*). When the hot water does work, Plaintiff breaks out in a rash for which he is prescribed "Hydrocerin" cream. (*Id.*). On March 9, 2012, Plaintiff received

a memo from Defendant Johnson stating that, starting March 12, 2012, due to the hot water problem, the residents had "a choice to take a shower or washing [] clothes." (*Id.*).  Plaintiff further alleges that Sgt. Susan Smith was ordered to tell correctional officers not to drink or use the water.  (*Id.*).

On August 17, 2012, Plaintiff filed a letter with the Court in which he raises other, unrelated issues to this action.  However, Plaintiff also reiterated his allegation that correctional officers were told not to use or drink the water at EJSP-STU, and were given "powerful anti-bacteria[l] soap on their hands."  (D.E. No. 46.).

## II.  <u>ANALYSIS</u>

A.  <u>Legal Standard</u>

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010)(quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (citing *Fed.R.Civ.P.* 56)).  "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012)(citation omitted).  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth

7

specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216.  "In determining whether summary judgment is warranted '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *DeShields*, 463 F. App'x at 119 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

B.  <u>Action Against Defendant Hastings</u>

Plaintiff admitted in his deposition that there are no remaining claims in this action against Defendant Hastings.  Further, Plaintiff conceded that Defendant Hastings should be dismissed from this action.  As there is nothing in the evidentiary record that establishes Hastings' personal involvement with regard to Plaintiff's denial of potable water claim, Defendant's motion for summary judgment will be granted and this action will be dismissed in its entirety as against Defendant Hastings.

C.  <u>Plaintiff Has Not Demonstrated a Constitutional Deprivation</u>

As stated above, the only claim remaining in this action pertains to Plaintiff's allegations that he has no potable water at the EJSP-STU.  Plaintiff is a civilly committed sexually violent predator ("SVP") under the New Jersey Sexually Violent Predator Act ("SVPA"), *N.J.S.A.* 30:4-27.24, *et seq*.  As a civilly committed person, the Fourteenth Amendment's Due Process Clause applies with

8

respect to Plaintiff's conditions of confinement claim.  *See Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).[2]

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, *Bell*, 441 U.S. at 536, within the bounds of professional discretion, *Youngberg*, 457 U.S. at 321-22. Specifically, in *Youngberg*, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties.  *Id*. at 307.  The Constitution is not concerned with *de minimis* restrictions on patients' liberties.  *Id*. at 320.  Moreover, "due process requires that the conditions and

---

[2]  "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."  *Bell v. Wolfish*, 441 U.S. at 537, n. 16 (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72, n. 40 (1977)); *see also City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983).

duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001).  While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs.  *See Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Under a Fourteenth Amendment conditions of confinement claim as asserted here by Plaintiff, "the proper inquiry is whether those conditions [at issue] amount to punishment of the detainee." *Bell*, 441 U.S. at 535.  *Bell* established a two-prong standard for determining whether conditions of confinement violate Due Process: whether the questioned "restrictions and practices" (1) "are rationally related to a legitimate nonpunitive governmental purpose[,]" and (2) "whether they appear excessive in relation to that purpose."  *Id.* at 561.  The first prong of the Bell analysis requires a two-part inquiry, analyzing "first, whether any legitimate purposes are served by [the] conditions [of confinement], and second, whether these conditions are rationally related to these purposes." *Hubbard v. Taylor*, 399 F.3d 150, 159 (3d Cir. 2005).

10

"In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 399 F.3d at 159 (quoting *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir.1983)).

Turning to the specific claim alleged in this action, there is no doubt that potable water constitutes a basic human need and that "[w]ater that is suitable for drinking and bathing" be supplied to inmates. *Bellezza v. Fischer*, 2006 WL 3019760, *4 (S.D.N.Y. Oct. 24, 2006). *See also Cruz v. Jackson*, No. 94 Civ. 2600(RWS), 1997 U.S. Dist. LEXIS 1093, at *19–20, 1997 WL 45348 (S.D.N.Y. Feb. 4, 1997)("Because contaminated water may pose serious health problems, an allegation that prison officials persistently provided only rusty drinking water would satisfy the objective component of an Eighth Amendment claim."); *Donahue v. Conn. Dep't of Corr.*, No. 3:11-cv-656(CFD), 2011 U.S. Dist. LEXIS 105447, *4 (D. Conn. Sept. 16, 2011).

However, Plaintiff is not constitutionally entitled to perfectly filtered water.  In *Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2001), the Court of Appeals for the Seventh Circuit affirmed summary judgment in connection with a prisoner's claim that the drinking water at Stateville was contaminated with radium in excess

of EPA standards.   The Seventh Circuit observed:

> [F]ailing to provide a maximally safe environment, one
> completely free from pollution or safety hazards is not [a form
> of cruel and unusual punishment]. Many Americans live under
> conditions of exposure to various contaminants. The Eighth
> Amendment does not require prisons to provide prisoners with
> more salubrious air, healthier food, or cleaner water than are
> enjoyed by substantial numbers of free Americans.

*Carroll*, 255 F.3d at 472-73.   *See also Truidalle v. Taylor*, 2011 WL

6780690, *4 (N.D. Ill. Dec. 23, 2011).[3]

Here, Plaintiff generally asserts that the water at the EJSP-STU

is contaminated or bad to use or drink.   Plaintiff does not provide

anything in the way of documentary evidence, however, to support this

claim.   At most, Plaintiff contends that the shower water, on

---

[3] This Court notes that the constitutional protections afforded under
the Fourteenth Amendment are greater than those provided by the
Eighth Amendment, which applies to convicted prisoners.   *See
Hubbard*, 399 F.3d at 167 n. 23.   More precisely, as stated *supra*,
under the Eighth Amendment, sentenced prisoners are protected from
punishment that is "cruel and unusual," while under the Fourteenth
Amendment standard, detainees are protected from any punishment.
*Id.*   However, the Third Circuit Court of Appeals has observed that
claims by pre-trial detainees have parameters that are coextensive
with those of the Eighth Amendment's prohibition against cruel and
unusual punishment.   *See Keller v. County of Bucks*, 2006 WL 3779749
*3 (3d Cir. Dec.22, 2006).   For instance, and pertinent here, the
Eighth Amendment's prohibition of cruel and unusual punishment
imposes duties on prison officials to provide prisoners with the
basic necessities of life, such as food, clothing, shelter,
sanitation, medical care and personal safety.   *See Farmer v.
Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25,
31 (1993).   Prison conditions may amount to cruel and unusual
punishment if they cause "unquestioned and serious deprivations of
basic human needs ... [that] deprive inmates of the minimal civilized
measure of life's necessities." *Tillman v. Lebanon County
Correctional Facility,* 221 F.3d 410 (3d Cir.2000).

occasion, has caused him to break out in rashes for which he is provided topical cream for relief.

Nevertheless, despite Plaintiff's complaint about an occasional rash, he does not provide any evidence that the water actually is contaminated.  In contrast, Defendants have shown that the weekly water tests for the entire 2012 year for the representative site closest to the EJSP-STU facility yielded normal results.  (*See* D.E. No. 45-1, Dec. of David Brogle, Assistant Director of Production at the Middlesex Water Company ¶¶ 7-12).

More significantly, this Court observes that Plaintiff was provided with an ample supply of filtered drinking water for the entire period at issue.  Plaintiff freely admitted in his deposition that he had access, at least five times a day, to a supply of filtered water at the start of his arrival at EJSP-STU.  Each time Plaintiff collected water from this filtered supply, he could collect several gallons of water to bring back to his room.  Moreover, Plaintiff alleges no harm from drinking this water made available to him.

Consequently, under these undisputed facts, Plaintiff has not demonstrated a constitutional deprivation with respect to his lack of potable water claim, the only remaining claim in this action, and Defendants therefore are entitled to summary judgment.[4]  *See Yellen*

---

[4]  Defendants argue that Plaintiff's action is motivated by resentment that he does not receive a free case of water every month,

*v. Olivarez*, 2012 WL 3757373, *8-9 (E.D. Cal. Aug. 28, 2012)(summary judgment granted where plaintiff failed to show evidence that the water at the prison presented a substantial risk of harm to plaintiff's health, and that defendants were not deliberately indifferent to plaintiff's health or safety); *Martinez v. Lape*, Civ. No. 9:09-CV-0665 (TJM/RFT), 2011 U.S. Dist. LEXIS 116106, at *27-28, 2011 WL 4527943 (N.D.N.Y. Mar. 28, 2011)(dismissing an inmate's claim that the facility's water was "interm[i]ttently discolored and smells of either chemicals or fecal/sewage matter," in part because plaintiff made "a general, blanket conclusory allegation that the 'water system is not operating on a constitutional level,'" and the inmate had failed to link the claim to the alleged injury); *Crocamo v. Hudson County Correctional Center*, 2007 WL 1175753, *6 (D.N.J. April 19, 2007)(the mere allegation that plaintiffs' skin became dry or developed a rash or "minor skin infections," without any other evidence, cannot alone establish that the water caused a serious illness. In addition, plaintiffs acknowledge it was treated with ointment) (citing *Ford v. Mercer County Correctional Center*, 171 Fed. App'x 416, 421 (3d Cir. 2006).

Accordingly, the Court will grant summary judgment on behalf of the remaining Defendant Johnson, and dismiss this action in its

---

as allegedly promised.  This argument is digressive given the fact that Plaintiff has admitted that he has access to filtered water about five times a day.

entirety.   Having determined that this matter should be dismissed, the Court need not reach Defendant Johnson's remaining arguments and defenses regarding qualified immunity, supervisor liability, and official capacity liability.   Moreover, Plaintiff's claims for punitive damages and injunctive relief are rendered moot given that Defendants are entitled to summary judgment and this action will be dismissed accordingly.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment, and this action will be dismissed in its entirety.   An accompanying Order is filed herewith.


s/Esther Salas
United States District Judge

15